UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**LEONARD WILLIAM DAY**                                                           **PLAINTIFF**

**v.**                                                           **CIVIL ACTION NO. 3:07-CV-P42-S**

**DEBORAH WILLIAMS et al.**                                                     **DEFENDANTS**

## MEMORANDUM OPINION

The plaintiff, Leonard William Day, filed a *pro se, in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 (DN 1). This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). As set forth below, the Court will dismiss certain claims and allow other claims to proceed.

## I. SUMMARY OF CLAIMS

The plaintiff is incarcerated at the Luther Luckett Correctional Complex (LLCC). He names as defendants Deborah Williams, a nurse practitioner at LLCC, and Scott Haas, Medical Director at the Kentucky Department of Corrections (KDOC). He sues each defendant in his or her individual and official capacity for monetary damages in the amount of $10,000; injunctive relief in the form of an order for KDOC to fix his hernia; and punitive damages in an amount deemed appropriate for his suffering. He also asks for an injunction to protect him "from any kind of retaliation, such as transfer, while [his] claim is being heard by this Court."

The plaintiff's complaint alleges that in May 2005, while working out, he felt a sharp pain in his lower abdomen. In June 2005, he was diagnosed by Nurse Williams with a history of left inguinal "'knot.'" The plaintiff states that he had a hernia in the same location 22 years earlier, which he had fixed at that time. He alleges that he asked that KDOC fix the hernia. Instead, he was given a truss and told that the hernia was not life threatening because it was

reducible. He asserts that, in the past year, the hernia has grown three times as big; that he is in continual pain, which prevents him from exercising; and that, because of lack of exercise, his blood pressure is elevated. He states that after an inquiry from him, in June 2006, the warden told him to set up another sick call for his hernia. The plaintiff alleges that the result of that sick call was that Nurse Williams again informed him that the hernia would not be fixed. He asserts that the defendants' decision to treat his hernia conservatively and not with surgery amounts to deliberate indifference to his serious medical needs and points out that two other inmates have had hernia surgery. He also states that his quality of life has been greatly affected by his lack of exercise.

The plaintiff attaches to his complaint a June 29, 2005 grievance, grieving the decision to treat his hernia with a hernia belt instead of surgery. The attached informal resolution of his grievance from Nurse Williams indicates that the plaintiff had stated upon examination that he had no pain associated with palpitation of the mild bulge of his surgical incision scar[1] and that the mesh appeared to be intact. The diagnosis was "mild reducible bulge at previous surgical scar LIHR 20 years prior with reported hx of mesh repair." The treatment and follow up plan was as follows: "Abd. Binder (dispensed), ice bag (Ziploc dispensed), truss (dispensed), OTC meds per pkg. Directions either Tylenol or IBU. RTC if increased bulge/pain."

On July 21, 2005, the plaintiff appealed that informal resolution, stating that he was in constant pain because of the hernia; that he had constant heartburn; that he could not sleep; and that he could not exercise without pain. He stated that OTC pain relievers and ice packs did not

---

[1] Handwritten notes at the bottom of the page, presumably written by the plaintiff, state in pertinent part, "Stated I was having pain" and "Have never stated I was not having pain."

help; that the bulge was getting bigger; that wearing the belt caused more pain; and that he wanted his hernia "fixed properly with surgery." The Health Care Grievance Committee Findings and Recommendations for that appeal stated that the plaintiff's hernia was reducible and that he was given a truss to support the area. The committee recommended that the plaintiff follow the medical provider's instructions and, if the hernia became painful or increased in size, that he sign up for sick call.

The plaintiff appealed that resolution stating that the pain had worsened and the bulge had enlarged. He also stated that he dealt with the stress of being convicted by exercising and was now being denied the life necessity of exercise. The Final Administrative Review of his grievance from Dr. Haas stated that Dr. Haas concurred with the findings of the committee and that the primary care provider was correct in her assessment and treatment of his condition.

Also attached to the plaintiff's complaint is a grievance dated July 10, 2006, in which the plaintiff asserted that his Eighth Amendment rights to medical care were being violated because his hernia had not been fixed and that the failure to fix it was causing him pain and denying him exercise. The informal resolution to that grievance stated that the plaintiff was seen by the practitioner on that date and given a belt (which he refused to wear), and that the process for getting a second opinion was explained to him, but that he had not followed up to do so. It also stated that examination on that date revealed no visible bulging or signs of discomfort; that at that time his hernia was not in an operable state; and that if the plaintiff would like a second opinion he should feel free to see Rhonda Coleman, who had signed the informal resolution.

The plaintiff appealed that resolution, stating that he had told the medical staff that he was not wearing the hernia belt because it caused him more pain and that he had pain every day.

The Health Care Grievance Committee denied his grievance, stating that it concurred with the informal resolution. In his appeal of that decision, the plaintiff stated that the fact that nothing had been done to fix his hernia left open the possibility that the hernia would strangulate in the future and asserted that the truss caused pain. The Final Administrative Review of that grievance from Dr. Haas stated that the plaintiff was not being treated with deliberate indifference and that his condition was being conservatively treated, stating, "Recent medical research indicates that the success and complication rate is similar for both conservative and surgical repairs of non-complicated inguinal hernias."

The plaintiff also attaches to his complaint a July 2006 letter to Jeff Middendorf, General Counsel for KDOC, telling him that KDOC had not fixed his diagnosed hernia and that, because he could not exercise due to the pain, his blood pressure was high. Also attached is a December 2006 letter to Commissioner John Rees stating that he felt getting a second opinion would be futile because the issue was not whether or not he had a hernia but what would be done to fix it. He stated further that the pain is continuous, he gets no exercise at all, and that the truss not only causes pain but does not help because the hernia has begun to fall out of the bottom.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore,

dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), a plaintiff is required to plead more than bare legal conclusions. *Lillard v. Shelby County Bd. of Educ*., 76 F.3d 716, 726 (6th Cir. 1996). Therefore, the "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Id.* (internal quotation marks and citations omitted).

*Official Capacity Claims*

The plaintiff sues each of the defendants in their official capacities. The claims brought against the defendants in their official capacities are deemed claims against the Commonwealth of Kentucky itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). To state a § 1983 claim, a plaintiff must allege that a "person" acting under color of state law deprived the plaintiff of a right secured by the Constitution or federal law. *See* § 1983. States, state agencies, and state officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989). Thus, to the extent

that the plaintiff seeks money damages from these state officers in their official capacities, he has failed to allege cognizable claims under § 1983. Moreover, the defendants are immune from monetary damages under the Eleventh Amendment. *See id.* Therefore, the Court will dismiss the claims for monetary damages against the defendants in their official capacities pursuant to §§ 1915A(b)(1) and (b)(2).

*Eighth Amendment Claims*

To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). Thus, to state a cognizable claim, a prisoner must show that the official "acted or failed to act despite his knowledge of a substantial risk of serious harm" to the inmate. *Terrance*, 286 F.3d at 843 (quoting *Farmer*, 511 U.S. at 842). Less flagrant conduct, however, may still evince deliberate indifference where there is "a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment." *Id.* (quoting *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999)). Such grossly inadequate care is "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Not every claim of inadequate medical treatment states an Eighth Amendment violation. *Estelle*, 429 U.S. at 105. A difference of opinion between the inmate and the prison medical official(s) concerning diagnosis or treatment does not constitute a constitutional violation. *Id.* at

107. Nor does negligent medical care constitute a constitutional violation without deliberate indifference resulting in substantial harm. *Id.* at 106; *Johnson v. Leonelli*, No. 99-6220, 2000 WL 1434767, at *1 (6th Cir. Sept. 19, 2000). Further, the courts make a distinction between cases in which there is a complete denial of medical care and those where the claim is one of inadequate medical treatment. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*

This review occurs by virtue of the initial screening requirement of § 1915A. The actions and inactions of the defendants may or may not constitute a cognizable Eighth Amendment claim. This case may constitute only a difference of opinion between the plaintiff and the prison medical officials not rising to the level of a constitutional violation. However, the Court is unable to say at this time that the facts set forth by the plaintiff fail to show deliberate indifference to the plaintiff's serious medical need. The plaintiff's pain has continued for over a year without relief. He has tried the non-surgical approach to his problem prescribed by the defendants, but it has failed to relieve his pain or correct his problem. Moreover, the plaintiff has alleged that because of the pain he can no longer exercise, causing his blood pressure to rise. For these reasons, and out of an abundance of caution, the Court will allow the **Eighth Amendment claim against the defendants in their individual capacities to proceed forward at this time.**

*Preliminary injunction*

In the relief section of his complaint, the plaintiff asks for an injunction to protect him

7

"from any kind of retaliation, such as transfer, while [his] claim is being heard by this Court." Because the plaintiff asks for injunctive relief while his claim is being heard, the Court interprets this request for relief as a motion for preliminary injunction. "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't.*, 305 F.3d 566, 573 (6th Cir. 2002). "There are four factors that are particularly important in determining whether a preliminary injunction is proper: (1) the likelihood of the plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served." *Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk Southern Corp.*, 927 F.2d 900, 903 (6th Cir. 1991). The court must balance these four criteria, with the degree of proof necessary for each factor depending on the strength of the plaintiff's case on the other factors. *Golden v. Kelsey-Hayes Co.,* 73 F.3d 648, 657 (6th Cir. 1996). The district court is required to make findings concerning all four of these factors unless fewer factors dispose of the issue. *Int'l Longshoremen's Ass'n,* 927 F.2d at 903.

The Court will consider the second of the four preliminary injunction factors first since a specific finding of irreparable injury to the movant is the single most important element which a court must examine when evaluating a motion for a preliminary injunction. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (remedy of preliminary injunction is unavailable absent showing of irreparable injury); *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 102-03 (6th Cir. 1982). To demonstrate irreparable harm, the plaintiff must show "'actual and imminent' harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*,

443 F.3d 540, 552 (6th Cir. 2006). Based on the allegations in the plaintiff's complaint, the plaintiff's allegation of harm – retaliation by the defendants, such as transferring the plaintiff while his case is pending – is purely speculative, and "[t]he speculative nature of [the plaintiff's] claim of future injury requires a finding that this prerequisite of equitable relief has not been fulfilled." *Lyon*s, 461 U.S. at 111. Because the plaintiff has not shown irreparable harm, a preliminary injunction is not warranted. *See Friendship Materials, Inc.*, 679 F.2d at 103. Consequently, the Court will deny the plaintiff's motion at this time. The plaintiff may file a more particularized motion for a preliminary injunction should the need arise.

### III. CONCLUSION

The Court will enter a separate order dismissing all claims for monetary damages against the defendants in their official capacities. The Court also will enter a separate scheduling order governing the remaining claims. In permitting the remaining claims to go forward, the Court passes no judgment on the merits or ultimate outcome of this case.

Date:

cc: Plaintiff, *pro se*
Defendants
General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4411.009

9